## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **4CHAN COMMUNITY SUPPORT LLC**, 08 Lakeland Ave., Dover, DE 19901, <br><br>*and*<br><br> **LOLCOW, LLC,** d/b/a **KIWI FARMS**, 736 2nd Ave, South Charleston, WV 25303, <br><br><div align=center>*Plaintiffs*,</div><br><div align=center>*v.*</div><br> **THE UK OFFICE OF COMMUNICATIONS, a/k/a OFCOM**, Riverside House, 2a Southwark Bridge Road, London SE1 9HA, UK, <br><br><div align=center>*Defendant*.</div> | Civil Action. No. <br><br><br><br><br><br><br><br> **COMPLAINT** |

Plaintiffs 4chan Community Support LLC and Lolcow, LLC, through their undersigned counsel, allege and say as follows for their Complaint against defendant Ofcom:

### INTRODUCTION

1.    The Internet is a global system of communication between computer servers, located in data centers around the world. Despite the Internet's global reach, it is more or less universally acknowledged that the Internet is, predominantly, an American innovation, built by American citizens, residents, and companies, and that the United States has the largest and most thriving technology sector of any G7 member state.

2.    Foreign governments, particularly those in Europe, which have not managed to build technology sectors of their own have, for the past half-decade or more, sought to control the

American Internet, and hobble American competitiveness, through a range of legislative and non-legislative initiatives.

3.      These foreign governments have threatened American and other non-European entrepreneurs with a wide range of coercive threats, including, fines, arrest, and imprisonment, for engaging in conduct which is perfectly lawful in the territories where their websites are based, including in the United States. See, e.g., the arrest of Russian Internet entrepreneur Pavel Durov, founder of Telegram Messenger Inc., a BVI company, by French authorities in 2024, or the opening of a criminal file against U.S. social media company X Corp., a Texas corporation, also by French prosecutors, in July of 2025.

4.      The United Kingdom recently joined France in seeking to apply its domestic laws to the rest of the world, with the enactment of its censorship law, the Online Safety Act 2023 ("OSA"). Immediately after the OSA's substantive provisions entered into force, this censorship law was used to target the free speech rights of American citizens.

5.      The Online Safety Act grants wide commercial powers to a corporation. That corporation, Ofcom (defined below), now uses those powers to communicate written threats to impose ruinous civil penalties and referrals to law enforcement for criminal penalties, including arrest and imprisonment, to American real and corporate citizens if Ofcom's orders are not obeyed.

6.      This lawsuit seeks to restrain Ofcom's conduct and its continuing egregious violations of Americans' civil rights, including, without limitation, to the right of freedom of speech.

**PARTIES**

7.      Plaintiff 4chan Community Support LLC ("4chan") is a limited liability company formed under the laws of Delaware. 4chan's registered office is located at Capitol Services, Inc., 108 Lakeland Ave., Dover, DE 19901.

8.      Delaware was a colony of the Kingdom of Great Britain until the Assembly of the Lower Counties of Pennsylvania that declared itself independent of British authority on June 15, 1776, thereby creating the state of Delaware. Delaware subsequently ratified the Declaration of Independence, the instrument which created the United States of America on July 4, 1776. Under the terms of the 1783 Treaty of Paris, the Kingdom of Great Britain officially acknowledged the United States as a sovereign and independent nation.

9.      Plaintiff Lolcow LLC dba Kiwi Farms ("Kiwi Farms") is a limited liability company formed under the laws of West Virginia, with its address at 736 2nd Ave, South Charleston, WV 25303. This Complaint will refer to Lolcow, LLC as "Kiwi Farms" for ease of reference and because the Kiwi Farms website is the chief product of Lolcow, LLC.

10.     Although the area that comprises West Virginia was originally part of the British Virginia Colony, upon U.S. independence it constituted the western part of the U.S. Commonwealth of Virginia and, later, the state of Virginia. At the time of the U.S. Civil war, western Virginia was sharply divided over the issue of secession from the Union, leading to its separation from Virginia, formalized by West Virginia's admittance to the Union as a new state in 1863.

11.     Neither Delaware nor West Virginia are part of the UK. Their citizens, both natural and corporate, do not answer to the UK.

12.     Defendant UK Office of Communications ("Ofcom"), a name that is a portmanteau of "Office of Communications," is a statutory corporation formed in the United Kingdom of Great Britain and Northern Ireland (the "UK"), having an address at Riverside House, 2a Southwark Bridge Road, London SE1 9HA, UK. The UK is the successor state to the Kingdom of Great Britain.

13.     Ofcom was established as a corporate entity by the UK Parliament under the provisions of the UK Communications Act 2003. It is responsible for administering the Online Safety Act, which, as set out in detail below, includes purporting to enforce that UK law against everyone in the world, including real and corporate citizens of the United States, to the extent of making referrals to law enforcement where Ofcom deems it appropriate.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331, because this action arises under the Constitution and laws of the United States, specifically the First, Fourth, and Fifth Amendments to the Constitution and the Communications Decency Act.

15.     This Court has personal jurisdiction over Ofcom pursuant to the District of Columbia's long-arm statute, as Ofcom has committed unlawful acts within the District of Columbia by sending threatening communications to U.S.-based internet companies that interfere with their constitutional rights and business operations. Additionally, Ofcom is engaged in substantial and not isolated activity within the United States through its systematic targeting of U.S.-based internet platforms with its enforcement actions, including, reportedly, larger American social media companies including X, Rumble, and Reddit, which have direct effects within this jurisdiction.

16.     Venue is proper in this Court pursuant to 28 USCS § 1391, as a substantial part of the events giving rise to the claims occurred in this district, and under 28 USCS § 1391(c)(3), as Ofcom is a defendant not resident in the United States and may therefore be sued in any judicial district. Additionally, the effects of Ofcom's actions are felt by internet companies operating in this district. Plaintiffs intend that their websites be fully accessible in this District, and defendant's conduct requires, or will require, that plaintiffs take costly measures to maintain that availability.

## FACTUAL ALLEGATIONS

17.    4chan runs an Internet imageboard website that is one of the most well-known websites in the world.

18.    4chan's website, while controversial, operates fully in compliance with the laws of the United States.

19.    4chan's website and its editorial decisions regarding what content its website hosts are protected by the First Amendment to the Constitution of the United States.

20.    4chan has no presence, operations, or infrastructure outside of the territorial limits of the United States.

21.    Kiwi Farms is a website and discussion forum that focuses on Internet culture. It is owned by Lolcow, LLC one of the most well-known small websites in the world.

22.    Kiwi Farms, while controversial, operates fully in compliance with the laws of the United States and West Virginia.

23.    Kiwi Farms' website and its editorial decisions regarding what content its website hosts are protected by the First Amendment to the Constitution of the United States.

24.    Kiwi Farms has no presence, operations, or infrastructure outside of the territorial limits of the United States.

**Ofcom: The UK's Industry-Funded Global Censorship Bureau**

25.    Defendant Ofcom is a statutory corporation charged with regulating broadcasting and online communications within the United Kingdom.

26.    Ofcom's ambitions are to regulate Internet communications for the entire world, regardless of where these websites are based or whether they have any connection to the UK. On

its website, Ofcom states that "over 100,000 online services are likely to be in scope of the Online Safety Act – from the largest social media platforms to the smallest community forum."

27.    On information and belief, most of the "online services" Ofcom intends to regulate, are based not in the United Kingdom, but in the United States. All four of Ofcom's first social media enforcement targets, being SaSu, Gab, Kiwi Farms, and 4chan, are American.

28.    Ofcom describes itself as "independent of government and the companies we regulate."

29.    Ofcom also says, of itself, that "Ofcom is not funded directly by taxpayers or the Government. Most of Ofcom's funding comes from fees paid to us by the companies we regulate, to cover the cost of the work we do in their sectors."

30.    Ofcom is a private corporation that acts as an official censor of the British state even through it is not an instrumentality of the British state and not entitled to sovereign immunity under 28 USCS § 1604.

31.    Ofcom states on its website, "we do not censor what people write or post on the internet. Our job is to make sure that online services take steps to keep their users safe."

32.    Ofcom also states, "We're not responsible for removing online content, and we won't require companies to remove content, or particular accounts. Our job is to help build a safer life online by making sure firms have effective systems in place to prevent harm and protect the people using their services."

33.    As detailed below, these claims are false.

34.    In fact, Ofcom's conception of "keeping users safe" is keeping them "safe" from encountering points of view of which Ofcom disapproves. Ofcom purports to regulate content and interactions on platforms and services with which Plaintiffs' users are voluntarily interacting.

Ofcom seeks to control those interactions in order to satisfy the whims of Ofcom employees or the UK law enforcement or political apparatuses.

35.     Specifically, Ofcom is responsible for administering the Online Safety Act 2023 ("OSA"), a UK law that purports to regulate online content globally, including content hosted on servers in the United States, an independent state.

36.     Ofcom is an industry body established by statute and funded by the companies it purports to regulate. Ofcom has stated its intention, in public statements, that it intends to charge large web companies – being companies with a qualifying worldwide revenue ("QWR") of over £250,000,000 (two hundred fifty million pounds Sterling) – approximately 0.02% of their worldwide turnover as a fee to fund its operations (the "Ofcom Service Fee").

37.     The QWR is set by the UK Secretary of State for the Department for Science, Innovation, and Technology ("DSIT"). Pursuant to Section 86 of the Online Safety Act, prior to setting the QWR threshold, the DSIT must first take advice from Ofcom as to what the threshold figure should be.

38.     With the Ofcom Service Fee Ofcom has been granted, in effect, a statutory monopoly on the commercial provision of content moderation policy-writing services, for which it is entitled to charge the Ofcom Service Fee.

39.     On information and belief, the Ofcom Service Fee corresponds to services of a type normally performed by technology companies in-house in legal and policy departments.

40.     Unlike policy frameworks which have been developed in-house, however, Ofcom's commercial policymaking purports to be compulsory.

41.    Per Section 88(2) of the Online Safety Act, the fees to be imposed by Ofcom should be "sufficient to meet, but… not exceed, the annual cost to Ofcom of the exercise of its online safety functions."

42.    Per Section 88(8) of the Online Safety Act, Ofcom may make a profit in a given year, although Ofcom is required to carry forward any losses or surpluses to the following year and account for these losses or surpluses in the following year's budget.

43.    On information and belief, many, if not most, of the companies which Ofcom will eventually purport to require to fund Ofcom's unconstitutional enforcement machinery through the payment of the Service Fee are incorporated in, and headquartered in, the United States of America.

44.    Ofcom is a commercial enterprise.

45.    If the Court determines that Ofcom is an instrumentality of the UK, then Ofcom's activities constitute "commercial activity" carried on in the United States under 28 USCS § 1605(a)(2), and Ofcom is not immune from the jurisdiction of the courts of the United States for such activity. Therefore, the Foreign Sovereign Immunities Act would not bar this suit regardless of whether Ofcom is viewed as a corporation or as a state actor.

46.    If the Court determines that Ofcom is entitled to sovereign immunity, it does not preclude the Court's ability to grant the relief sought in this Complaint.

47.    Among other things, Section 9 the OSA purports to require United States companies to conduct written "risk assessments" for their compliance with UK law, to keep those risk assessments up to date, to carry out a further risk assessment before altering their service or software, and to assess the "level of risk of individuals who are users of the service encountering" a range of different types of content, including speech and content published and distributed in the

United States and which is protected by the Free Speech clause of the First Amendment of the U.S. Constitution.

48.    Notwithstanding its non-censorship claims, moreover, OSA also purports to impose legal duties on United States companies to remove user speech hosted on U.S. platforms, either proactively in the case of "priority illegal content," per Section 10(2) of the OSA, or on a notice-and-takedown basis for ordinary, non-priority "illegal content," per Section 10(3) of the OSA.

49.    "Priority illegal content" is defined under Schedules 5, 6 and 7 of the OSA. "Illegal content" is defined in Section 59 of the OSA as content which is not priority illegal content, where the "victim or intended victim of the offence is an individual" and the offence is created by primary legislation enacted by Parliament, an order in council, an order made by a crown minister, or devolved subordinate legislation.

50.    On information and belief, "priority illegal content" under Schedules 5 and 7 of the OSA, and "illegal content" as defined under Section 59 of the OSA, includes speech and conduct which is protected by the First Amendment of the U.S. Constitution, and which Plaintiffs have a right to host without state interference under the First Amendment of the U.S. Constitution.

51.    Section 12(4) of the OSA purports to require the Plaintiffs to verify the age of their users. This would prevent users from using Plaintiffs' services anonymously or pseudonymously.

52.    Plaintiffs permit users to post on their services pseudonymously or anonymously, and users often avail themselves of that pseudonymity or anonymity to express constitutionally protected political speech. The First Amendment protects Plaintiffs' right to permit anonymous use of their platforms, which necessarily involves not verifying their users' ages or identities, as well as Plaintiffs' users' rights to use Plaintiffs' platforms anonymously and without verifying their age or identity.

53. Section 23 of the OSA further purports to require United States providers of Internet services to "make and keep a written record, in easily understandable form, of all aspects of every risk assessment under sections 9 and 11 of the OSA, including details about how the assessment and its findings," among other things.

54. The purported requirement to carry out, maintain, explain, and furnish on demand "risk assessments" in accordance with, *inter alia,* Sections 9, 11, and 23 of the OSA unconstitutionally compels speech from the Plaintiffs.

55. Section 100 of the OSA purports to grant Ofcom the power to issue demands ("Section 100 Orders") to compel a recipient of such a notice to "provide [Ofcom] with any information that [Ofcom requires] for the purpose of exercising, or deciding whether to exercise, any of [Ofcom's] online safety functions."

56. Section 102(8) of the OSA purports to require Plaintiffs to comply with Section 100 Orders. This compliance may include the provision of potentially incriminating information to Ofcom on demand, including explanations of how Plaintiffs intend to comply with the OSA, copies of any risk assessment the Plaintiffs may have prepared, or by disclosing the existence or non-existence of an illegal content risk assessment.

57. Under Section 113 of the OSA, failure to respond to a Section 100 Order, or a defective or evasive response to a Section 100 Order, is punishable by civil fines, criminal charges, criminal fines, 6 months' imprisonment when tried summarily, or even imprisonment for up to two years when tried on indictment.

58. Ofcom threatened Plaintiffs with all of these penalties for non-compliance.

59. Ofcom also claims that it may require United States citizens to comply with information notices and potentially incriminate themselves on demand without Ofcom first

10

obtaining a judicial warrant or serving a request under the UK-United States Mutual Legal Assistance Treaty procedure.

60.     Plaintiffs have a constitutional right to refuse Section 100 Orders under, *inter alia*, the free speech clause of the First Amendment of the U.S. Constitution, the Fourth Amendment of the U.S. Constitution, and the right against self-incrimination and the due process clause of the Fifth Amendment of the U.S. Constitution.

61.     Section 179 of the Online Safety Act, the "false communications offence," makes it a criminal offense to send information which the sender knows to be false if, at the time of sending that message, the person intended the message to cause non-trivial psychological or physical harm to a likely audience, and the person had no "reasonable excuse" for sending that message.

62.     Section 179 of the Online Safety Act effectively creates a defamation crime in the United Kingdom.

63.     Defamation crimes such as Section 179 of the OSA, including the historical crime of seditious libel, were permanently abolished in the United States when the First Amendment of the United States Constitution was ratified on December 15, 1791.

64.     Section 10(3) of the OSA purports to require Plaintiffs to remove content which is illegal under Section 179 of the OSA.

65.     Ofcom's notices and demands to 4chan, including the "legally binding information notice" on April 14, 2025, the "failure to respond" letter on April 30, 2025, the investigation notice on June 9, 2025, the "final legal notice" on June 16, 2025, the "Preliminary Contravention Email" on July 9, 2025, and the "provisional decision notice" on August 12, 2025, to the extent that they

pertain to speech proscribed by Section 179 of the OSA, constitute foreign judgments that would restrict speech protected under U.S. law including under, e.g. the SPEECH Act, 28 USCS § 4101.

66. The Plaintiffs are providers of "interactive computer services" as such term is defined in Section 230 of the Communications Decency Act, 47 USCS § 230(f)(2).

67. 4chan and Kiwi Farms operate websites that allow users to post and share content, qualifying them as providers of interactive computer services.

68. Ofcom seeks to treat the plaintiffs as publishers or speakers of third-party content.

69. Ofcom has demanded that the plaintiffs comply with the Online Safety Act, which would require them to remove user-generated content and implement content moderation policies that treat them as publishers of third-party content.

70. Ofcom's actions conflict with the Plaintiffs' Section 230 protections.

71. Section 230(c) of the Communications Decency Act immunizes providers of interactive computer services from liability for content created by their users, but Ofcom's demands would impose such liability on the Plaintiffs by treating Plaintiffs as the "publisher or speaker" of their users' speech.

72. Sections 9, 10, 12, 13, 23, 59, 100, 102, 113, and 179 of the OSA, taken individually and together, as well as other provisions of the OSA, purport to compel U.S. website operators to express, or oblige U.S. website operators to censor, speech in a manner contrary to the protections of the Constitution of the United States; to remove or block access to speech which is not criminal in any way, shape or form under U.S. law; and, in many cases, to remove or block access to speech which is designated for specific protection by United States law.

**Ofcom's Attempt to Censor 4chan**

73. On April 14, 2025, Ofcom sent a so-called "legally binding information notice" to 4chan (the "4chan Information Notice").

74.     The 4chan Information Notice stated that "failure to comply" with it "may also constitute a criminal offence" and that failure to provide the requested information in readable form to Ofcom may result in a fine of £18 million or 10% of 4chan's worldwide turnover, arrest, and/or "imprisonment for a term of up to two years, or a fine (or both)."

75.     The 4chan Information Notice threatened 4chan with criminal penalties, and was not validly served under the US-UK Mutual Legal Assistance Treaty.

76.     On April 30, 2025, Ofcom sent a second letter to 4chan (the "4chan Failure to Respond to Information Notice Letter").

77.     The 4chan Failure to Respond to Information Notice Letter was not validly served under the US-UK Mutual Legal Assistance Treaty.

78.     The 4chan Failure to Respond to Information Notice Letter stated that 4chan was required to comply with the 4chan Information Notice, threatened a penalty of £18 million or 10% of 4chan's worldwide revenue, whichever is greater, and advised 4chan that failing to comply with the 4chan Information Notice was a criminal offense.

79.     On June 9, 2025, 4chan received a letter from Ofcom in which Ofcom advised 4chan that it intended to open an investigation into 4chan for suspected violations of "illegal content risk assessment duties," "safety duties about illegal content," "record-keeping and review duties," and "Section 102(8) duties about information notices."

80.     On June 16, 2025, Ofcom sent 4chan a so-called "final legal notice" (the "4chan Final Legal Notice").

81.     The 4chan Final Legal Notice stated that "failure to comply" with it "may also constitute a criminal offence" and that failure to provide the requested information in readable

form to Ofcom may result in a fine of £18 million or 10% of 4chan's worldwide turnover, "imprisonment for a term of up to two years, or a fine (or both)."

82.    The 4chan Final Legal Notice was not validly served under the US-UK Mutual Legal Assistance Treaty.

83.    On July 9, 2025, Ofcom sent 4chan an e-mail (the "4chan Preliminary Contravention Email") stating its displeasure with the fact that 4chan had not responded to its prior correspondence "regarding 4chan Community Support LLC's compliance with the duties in section 9(2) (illegal content risk assessment), 10 (illegal content safety duties), 23 (record keeping) and 102(8) (compliance with information notices) of the Online Safety Act 2023."

84.    The 4chan Preliminary Contravention Email stated that "[Ofcom] intend[s] to issue a Provisional Notice of Contravention concerning 4chan Community Support LLC's duty under Section 102(8) of the Online Safety Act, as 4chan Community Support LLC failed to provide the information requested by two information notices we issued under Section 100 of the Act on 14 April 2025 and 16 June 2025."

85.    Section 100 of the Online Safety Act purports to require American real and corporate citizens to provide information to Ofcom on the status of their compliance with the Online Safety Act on demand, on pain of ruinous fines, arrest, and even imprisonment.

86.    Ofcom sent the 4chan Preliminary Contravention Email to multiple inboxes at the 4chan.org domain unrelated to legal process.

87.    The 4chan Preliminary Contravention Email was not validly served under the US-UK Mutual Legal Assistance Treaty.

88.      On August 12th, Ofcom sent a 33-page-long so-called "Provisional Decision" notice (the "4chan Provisional Decision Notice") finding that 4chan Community Support LLC violated Section 102(8) of the Online Safety Act in relation to the Section 100 Order served upon it.

89.      The 4chan Provisional Decision Notice threatened to impose a fine of £20,000 (twenty thousand pounds Sterling) on 4chan Community Support LLC, as well as daily fines of £100 (one hundred pounds Sterling) daily for noncompliance for up to a maximum of sixty days.

90.      Ofcom sent the 4chan Provisional Decision Notice to multiple inboxes at the 4chan.org domain unrelated to legal process.

91.      The 4chan Provisional Decision Notice was not validly served under the US-UK Mutual Legal Assistance Treaty.

**Ofcom's Attempt to Censor Kiwi Farms**

92.      On March 26, 2025, Ofcom sent a letter, by e-mail, to Kiwi Farms (the "Kiwi Farms Advisory Letter").

93.      The Kiwi Farms Advisory Letter stated that Ofcom "is the regulator for online safety in the UK under the UK's Online Safety Act 2023 ('the Act'), which created a new regulatory framework with the purpose of making regulated services safer for UK users."

94.      The Kiwi Farms Advisory Letter also stated it "does not matter where you or your business are based, the new duties will apply to you or your business if the service you provide has links to the UK."

95.      Other than being accessible to Internet users in the UK who voluntarily choose to peruse and interact with its online content, Kiwi Farms has no links to the UK.

96.      The Kiwi Farms Advisory Letter also stated "[c]ertain duties under the Act are now in effect, and if you are in scope you are therefore required to take steps to comply with these."

97.     The Kiwi Farms Advisory Letter also stated that Kiwi Farms was required to "carry out an illegal content risk assessment" and "keep a record of their risk assessments."

98.     The Kiwi Farms Advisory Letter also stated that Ofcom "will be sending you a legally binding information notice. requiring you to submit the record of the illegal content risk assessment relating to your service (or services) by 17 April 2025."

99.     The Kiwi Farms Advisory Letter further stated that failure to comply with Ofcom's demands "may result in enforcement action, including financial penalties of £18 million, or up to 10% of a regulated service's worldwide revenue, whichever is greater."

100.    Following receipt of the Kiwi Farms Advisory Letter, Kiwi Farms blocked UK users from accessing its website.

101.    Kiwi Farms, through its counsel, replied to the Kiwi Farms Advisory Letter on March 31, 2025. In that response, Kiwi Farms stated, among other things, that "where Americans are concerned, the Online Safety Act purports to legislate the Constitution out of existence. Parliament does not have that authority. That issue was settled, decisively, 243 years ago in a war that the UK's armies lost and are not in any position to relitigate."

102.    Kiwi Farms' website was taken down for maintenance on July 16, 2025. Site access was restored that same day, but with the UK IP block not yet reactivated as that functionality was not ready to deploy into production given ongoing site maintenance work.

103.    Notwithstanding the short gap of availability of the Kiwi Farms website in the UK during this interval, Ofcom sent a second demand to Kiwi Farms on July 25, 2025, demanding that Kiwi Farms comply with the OSA (the "Second Kiwi Farms Demand").

104.    In response to Ofcom's correspondence, including the demand that Kiwi Farms tailor its operations to the diktats of a foreign regulatory body having no legal authority over it, Kiwi Farms decided not to restore the IP block of the UK.

105.    When Kiwi Farms received the Second Kiwi Farms Demand, it was aware that Ofcom had threatened American citizens and companies with criminal penalties for non-compliance, as this was a matter of public record at that time.

106.    After sending the Kiwi Farms Advisory Letter, Ofcom said, in a statement to Recorded Future news which was published in an article on March 28, 2025, "make no mistake, providers who fail to introduce measures to UK users from illegal content can expect to face enforcement action."

107.    Ofcom's statement to the press was a threat of criminal penalties directed towards Kiwi Farms.

108.    The Second Kiwi Farms Demand renewed that threat, and was not validly served under the US-UK Mutual Legal Assistance Treaty.

109.    Kiwi Farms understood the Second Kiwi Farms Demand to be, in substance, a Section 100 Order.

**The Illegal and Unconstitutional Nature of Ofcom's Transnational Censorship Efforts**

110.    On information and belief, Ofcom targeted Plaintiffs not as part of neutral enforcement activity, but for overtly political reasons aimed at undermining the First Amendment in the United States, intimidating Americans in the free exercise of their constitutional rights, and crippling the American Internet sector.

111.    Ofcom also targeted Plaintiffs to intimidate American companies into obeying the UK's illegal and unconstitutional scheme, paying Ofcom the Service Fee, and funding Ofcom's

commercial activities, despite Ofcom having no lawful power to impose the Service Fee on American companies.

112.    On information and belief, all four of Ofcom's first four enforcement actions against social media companies, all of which were American, including those against the Plaintiffs, sought to make public examples of some of the most well-known, but small and, financially speaking, defenseless platforms in the United States.

113.    On information and belief, Ofcom's actions were intended to deliberately undermine the First Amendment and American competitiveness, signaling consequences to larger American companies that might otherwise resist the UK's regulatory overreach, with a collateral benefit that such enforcement actions would suppress dissenting or controversial speech that challenges prevailing political orthodoxy within the United Kingdom – even, or perhaps especially, when that speech originates in the United States.

114.    By virtue of the foregoing, Ofcom has issued Plaintiffs with threats that they may be arrested and jailed by UK law enforcement for noncompliance, that Ofcom may impose ruinous fines and civil penalties on Plaintiffs of up to 10% of their worldwide revenue or £18 million (eighteen million pounds Sterling) (approximately twenty-four million U.S. dollars) for noncompliance, in addition to the specific threats directed to 4chan in the 4chan Provisional Decision Notice.

115.    Ofcom has not withdrawn the threats it made to the Plaintiffs.

116.    Plaintiffs, lawfully and bravely exercising their rights under the U.S. Constitution, refused Ofcom's demands.

## CLAIMS FOR RELIEF

## Count I – DECLARATORY JUDGMENT
### Improper Service of Process – 4chan

117.    Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if set forth fully herein.

118.    An actual and justiciable controversy exists between 4chan and Ofcom under the federal Declaratory Judgment Act, 28 USCS § 2201.

119.    Ofcom purported to effectuate legal process on 4chan through emails transmitted to 4chan's corporate services company.

120.    That entity is not authorized to accept service on behalf of 4chan.

121.    Specifically, Ofcom emailed to 4chan's corporate services vendor a "legally binding information notice" on April 14, 2025, a "failure to respond to information notice letter" on April 30, 2025, a letter confirming Ofcom would be opening an investigation on June 9, 2025, a "final legal notice" on June 16, 2025, a "preliminary contravention email" on July 9, 2025, and a "provisional decision notice" on August 12, 2025.

122.    None of these actions constitutes valid service under the US-UK Mutual Legal Assistance Treaty, United States law or any other proper international legal process.

123.    Ofcom's improper service has caused 4chan to incur legal expenses, face threats of substantial fines and potential imprisonment as well as other sanctions.

124.    4chan has no adequate remedy at law.

## Count II – DECLARATORY JUDGMENT
### Improper Service of Process – Kiwi Farms

125.    Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if set forth fully herein.

126.    An actual and justiciable controversy exists between Kiwi Farms and Ofcom under the federal Declaratory Judgment Act, 28 USCS § 2201.

127.    Ofcom purported to effectuate legal process on Kiwi Farms by sending Kiwi Farms an "advisory letter" on March 26, 2025, stating that it would be sending a "legally binding information notice" asserting that Kiwi Farms was required to submit records of risk assessments to Ofcom by April 17, 2025.

128.    Ofcom sent a second demand to Kiwi Farms on July 25, 2025.

129.    None of these actions constitutes valid service under the US-UK Mutual Legal Assistance Treaty, United States law or any other proper international legal process.

130.    Ofcom's improper service has caused Kiwi Farms to incur legal expenses, face threats of substantial fines and potential imprisonment as well as other sanctions.

131.    Kiwi Farms has no adequate remedy at law.

### Count III - DECLARATORY JUDGMENT
### Unconstitutionality of UK Section UK Section 100 Order – 4chan

132.    Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if set forth fully herein.

133.    An actual and justiciable controversy exists between 4chan and Ofcom under the federal Declaratory Judgment Act, 28 USCS § 2201.

134.    Ofcom issued a "legally binding information notice" to 4chan on April 14, 2025, and a "final legal notice" on June 16, 2025, demanding compliance with the Online Safety Act.

135.    These orders would require 4chan to remove protected speech from its platform, conduct risk assessments, and comply with Section 100 Orders.

136.     Such requirements would violate 4chan's rights under the First, Fourth, and Fifth Amendments to the Constitution and conflict with Section 230 of the Communications Decency Act, and are for these and other reasons repugnant to United States public policy.

137.     By virtue of the foregoing, Ofcom has begun, or imminently threatened to begin, coercive action to enforce its purported rights against 4chan.

138.     4chan has no adequate remedy at law.

139.     A declaratory judgment that these orders are unenforceable in the United States would resolve the controversy.

### Count IV - DECLARATORY JUDGMENT
### Unconstitutionality of UK Section 100 Order – Kiwi Farms

140.     Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if set forth fully herein.

141.     An actual and justiciable controversy exists between Kiwi Farms and Ofcom under the federal Declaratory Judgment Act, 28 USCS § 2201.

142.     Ofcom sent an "advisory letter" to Kiwi Farms on March 26, 2025, stating that it would be sending a "legally binding information notice" requiring Kiwi Farms to submit records of risk assessments.

143.     Ofcom sent a second demand to Kiwi Farms on July 25, 2025.

144.     These communications effectively constitute a Section 100 Order under the UK Online Safety Act, as they purport to require Kiwi Farms to remove protected speech, conduct risk assessments, and supply information about its compliance posture to Ofcom, in the manner of a Section 100 Order.

145.     Such requirements would violate Kiwi Farms' rights under the First, Fourth, and Fifth Amendments to the Constitution; conflict with Section 230 of the Communications Decency

Act; and are incompatible with the requirement of due process of law; and are for these and other reasons repugnant to United States public policy.

146.    Kiwi Farms has no adequate remedy at law.

147.    A declaratory judgment that these orders are unenforceable in the United States would resolve the controversy.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and against defendant and grant the following relief:

a.  A declaration that Ofcom's attempts to serve process on the Plaintiffs were improper and invalid;

b.  A permanent injunction prohibiting Ofcom from issuing any further orders or demands to the Plaintiffs without proper service through the US-UK Mutual Legal Assistance Treaty or other proper international legal process;

c.  A declaration that Ofcom's orders and demands are unenforceable in the United States as inconsistent with the First, Fourth, and Fifth Amendments to the United States Constitution, the SPEECH Act, the Communications Decency Act, and U.S. public policy;

d.  A permanent injunction prohibiting Ofcom from enforcing or attempting to enforce the Online Safety Act against the Plaintiffs in the United States; and

e.  Such other and further relief as the Court deems just and proper.

COLEMAN LAW FIRM, PC

By: _____
          Ronald D. Coleman

DDC Bar ID: NY0460
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611
rcoleman@colemanlaw-pc.com

Preston J. Byrne (*admission pending*)
Byrne & Storm, P.C.
782 Boston Post Road, Suite 204
Madison, CT 06443
203-900-4076
preston@byrnestorm.com

*Attorneys for Plaintiffs*

Dated:  August 27, 2025