**EXHIBIT 5**



Neutral Citation Number: [2025] EWHC 2086 (Admin)

Case No: AC-2025-LON-001365

**IN THE HIGH COURT OF JUSTICE**
**KING'S BENCH DIVISION**
**ADMINISTRATIVE COURT**

Royal Courts of Justice
Strand, London, WC2A 2LL

Date: 11 August 2025

**Before** :

**MR JUSTICE JOHNSON**

- - - - - - - - - - - - - - - - - - - -

**Between** :

**(1) Wikimedia Foundation**
**(a charitable foundation registered in the United States of America)**
**(2) BLN**                                          **Claimants**

**- and -**

**Secretary of State for Science, Innovation and Technology**   **Defendant**

- - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - -

Rupert Paines and Raphael Hogarth (instructed by Pinsent Masons LLP) for the Claimants
Cecilia Ivimy KC, Ruth Kennedy and Joseph Lavery (instructed by the Government Legal
Department) for the Defendant

Hearing dates: 22 – 23 July 2025
- - - - - - - - - - - - - - - - - - - -

# Approved Judgment

This judgment was handed down by release to The National Archives on 11 August 2025

**Mr Justice Johnson:**

1.   The first claimant is a charitable foundation which hosts the online encyclopaedia, Wikipedia. The second claimant is a user and editor of Wikipedia. The claimants challenge the Secretary of State's decision to make regulation 3 of the Online Safety Act 2023 (Category 1, Category 2A and Category 2B Threshold Conditions) Regulations 2025. That regulation prescribes the criteria for "Category 1" online services, which are made subject to many statutory duties.

2.   The claimants say that the criteria are logically flawed. They were intended to capture large profitable social media companies where anonymous content can "go viral". However, they were (say the claimants) drawn too broadly with the result that Wikipedia is likely to qualify as a Category 1 service even though that was never the policy intention. If Wikipedia is a Category 1 service, that will fundamentally change the way it operates. Either the number of people in the United Kingdom who access Wikipedia will have to be reduced by around three quarters, or important functionality corresponding to Category 1 threshold criteria must be disabled, or else the first claimant will have to comply with duties that are not reasonably manageable and which are incompatible with the way in which Wikipedia operates.

3.   Allowing for the way in which the arguments were ultimately advanced (and slightly re-numbering and re-characterising the grounds accordingly), the claimants say that the decision to make the regulation was flawed on the grounds that:

     (1) the Secretary of State failed to comply with a duty imposed by paragraph 1(5) of schedule 11 to the Online Safety Act 2023 to take into account the likely impact of the number of users of the user-to-user part of a service, and its functionalities, on the ease, speed and breadth of the dissemination of user-generated content.

     (2) the decision was irrational because it was based on flawed reasoning.

     (3) the decision is incompatible with articles 8, 10 and 11 of the European Convention on Human Rights.

     (4) the decision is incompatible with article 14 of the Convention (or is otherwise irrational) because it fails to distinguish between different types of online provider.

4.   There is a degree of urgency in these proceedings because they are, in effect, holding up part of a complex regulatory process that needs to be worked through before important parts of the Act take effect. For that reason, the claim was listed for hearing on an expedited basis for the court to consider both the question of whether permission should be granted to bring a claim for judicial review and, if so, whether the decision to make regulation 3 was flawed on one or more of the grounds asserted by the claimants.

5.   BLN has filed a witness statement, as has Philippe Bradley-Schmieg who is the first claimant's in-house lead counsel. The defendant has filed a statement from Talitha Rowland, Director, Security and Online Harms at the Department for Science, Innovation and Technology. Ms Rowland has been in her current post throughout the period when consideration was given to the making of the 2025 regulations. She provided senior civil servant sign off on all relevant Ministerial Submissions, and she

engaged regularly with the policy team and with ministers and their officials throughout the decision-making process.

## Wikipedia

6.      Mr Bradley-Schmieg explains how Wikipedia works.

7.      Wikipedia is a free, public interest, non-profit, collaboratively edited encyclopaedia that is available to anyone with access to the internet anywhere in the world, save for a small number of countries or institutions that block access. There are over 300 different language versions. It is said to be the largest and most-read reference work in history. Over 5 billion pages on the English language version of Wikipedia are viewed by users each month. That includes 789 million pages that are viewed by users in the United Kingdom. It is accessed by around 26 million people in the United Kingdom each month.

8.      Wikipedia was founded in January 2001 by Jimmy Wales and Larry Sanger. It is hosted by the first claimant, which provides the software for it to function as well as the necessary technical, administrative and legal infrastructure. It operates in a highly transparent and democratic manner. The underlying computer code is open-source and can be freely inspected on the internet. Its policies and guidelines are developed by its users and are, again, published. Wikipedia runs on software that enables visitors to its website to create and edit content. That in turn enables content to be modified, curated or deleted by users. The result is that with very limited exceptions (for example, removal of content required by a court order, and automatic removal of child sexual exploitation and abuse material) the content is entirely self-regulated by users.

9.      Any user can add an article or amend an existing article. As soon as they do so, the new or amended article is (usually) instantly available to all other users, who can then, in turn, edit that new article. This also means that any one article may be the product of the work of many different users. For example, an article relating to Queen Elizabeth II has been edited over 18,000 times, and the first sentence alone is the product of edits made by 11 separate authors. Mr Bradley-Schmieg says this means that the user verification duties in the Act (under which users can choose only to encounter content from other users whose identity has been verified) are incompatible with the nature of Wikipedia as a collaboratively edited encyclopaedia. Content that has been generated by users whose identity has been verified cannot sensibly be isolated from content generated by anonymous users without rendering the service unusable: articles would, generally, not make sense.

10.     The community of users sets the principles and policies that are applied to content on Wikipedia. They include neutrality of viewpoint and an obligation to provide references to reliable and publicly verifiable sources. If a user does not comply with Wikipedia's principles and policies, then their edits are likely to be deleted by other users. This process of user-moderation works. Content that does not comply with Wikipedia's principles and policies is rapidly removed. An independent study has shown that the median time for such content to be taken down is just 61 seconds. Harmful content is not typically encountered. In 2024, the first claimant received 664 requests to take down material (across all of its projects, not just Wikipedia), and it was required to do so in only 4 cases. By contrast, TikTok received 375,899 reports of illegal content in the same period and removed 63,723 items.

same way): *Thlimmenos v Greece* (2000) 31 EHRR 12 at [44], *R (DA) v Secretary of State for Work and Pensions* [2019] UKSC 21; [2019] 1 WLR 329 *per* Baroness Hale at [136].

130.    The claimants' complaint under ground (4) (whether presented as an irrationality challenge or a breach of article 14) is that the Secretary of State should have drawn a distinction between non-profit making charities such as the first claimant and major highly profitable technology companies (such as Alphabet, Meta and X) that run large social media and chat platforms (such as Facebook, Instagram, YouTube and X). The premiss for the complaint is that the legislation was intended to target "profit making social media companies". The premiss is, however, misplaced. Although it is possible to point to instances of political rhetoric where reference has been made to the profits made by companies in Silicon Valley, nothing in the legislation (or in the permissible aids to its interpretation) show that its focus was limited to any particular type of company. Rather, it is clear that it is intended broadly to capture and regulate online companies that give rise to different types of risk across a wide range of online providers of different types.

131.    There are some forms of risk that may be inherently less acute in the case of a non-profit making charity. For example, if such a charity does not carry adverts, then fraudulent advertising will not be an issue. But there is no evidence that the broad risks to public discourse that are intended to be captured by a Category 1 designation are limited to profit-making companies. On the evidence, the fact that the first claimant does not make a profit does not distinguish it from other online providers so far as concerns its potential to influence public discourse.

132.    For these reasons, I refuse permission to claim judicial review on ground (4).

## Outcome

133.    I refuse permission to claim judicial review on grounds (3) and (4) because the claimants do not have standing to bring a claim under the Human Rights Act 1998 and because those grounds of claim do not (as matters stand) have arguable merit.

134.    I grant permission to claim judicial review on grounds (1) and (2), but I dismiss the claim. The claimants have not shown that the decision to make regulation 3 is flawed on any of the grounds that they have advanced.

135.    I stress that this does not give Ofcom and the Secretary of State a green light to implement a regime that would significantly impede Wikipedia's operations. If they were to do so, that would have to be justified as proportionate if it were not to amount to a breach of the right to freedom of expression under article 10 of the Convention (and, potentially, a breach also of articles 8 and 11). It is, however, premature to rule on that now. Neither party has sought a ruling as to whether Wikipedia is a Category 1 service. Both parties say that decision must, for the moment, be left to Ofcom. If Ofcom decides that Wikipedia is not a Category 1 service, then no further issue will arise.

136.    Ofcom's decision as to which services fall within Category 1 is a public law decision which is potentially amenable to the court's review on grounds of public law error (including incompatibility with a Convention right). So, if Ofcom impermissible

concludes that Wikipedia is a Category 1 service, the claimants have a remedy by way of judicial review.

137.    If Ofcom permissibly determines that Wikipedia is a Category 1 service, and if the practical effect of that is that Wikipedia cannot continue to operate, the Secretary of State may be obliged to consider whether to amend the regulations or to exempt categories of service from the Act. In doing so, he would have to act compatibly with the Convention. Any failure to do so could also be subject to further challenge. Such a challenge would not be prevented by the outcome of this claim.