# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 4CHAN COMMUNITY SUPPORT LLC; and LOLCOW, LLC, d/b/a KIWI FARMS,<br><br>    Plaintiffs,<br><br>v.<br><br>THE UK OFFICE OF COMMUNICATIONS, a/k/a OFCOM,<br><br>    Defendant. | Case No. 1:25-cv-02880-RC |

## DEFENDANT OFCOM'S REPLY IN
## SUPPORT OF ITS MOTION TO DISMISS

Robert K. Kry
D.C. Bar # 490545
Christian I. Bale
D.C. Bar # 90020099
MOLO LAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
(202) 556-2011
rkry@mololamken.com

*Attorneys for the UK Office of Communications, a/k/a Ofcom*

## **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.      Ofcom Has Sovereign Immunity from This Suit ................................................................ 1

          A.      Plaintiffs Forfeited Any Argument that Ofcom Is Not a Foreign
                State Entity ................................................................................................................2

          B.      Plaintiffs' Commercial Activity Arguments Are Meritless .....................................3

                1.      Ofcom's Online Safety Regulation Is a Sovereign Activity
                      Regardless of the Scope of Any U.S. Constitutional Provisions .................3

                2.      Ofcom's Online Safety Regulation Is Not Comparable to Activities
                      of Private Industry Groups ...........................................................................5

II.     Plaintiffs Do Not Meaningfully Engage with the Forum Non Conveniens and
          Comity Standards ............................................................................................................... 7

III.    Kiwi Farms Has Not Established Ripeness or Standing ..................................................... 9

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

\* *In re Air Crash over S. Indian Ocean on Mar. 8, 2014*,
    946 F.3d 607 (D.C. Cir. 2020)...................................................................................8

*Al-Tamimi v. Adelson*,
    916 F.3d 1 (D.C. Cir. 2019).......................................................................................2

*Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*,
    600 F.3d 171 (2d Cir. 2010)......................................................................................6

*AT&T Co. v. EEOC*,
    270 F.3d 973 (D.C. Cir. 2001)...................................................................................9

*Briscoe v. Costco Wholesale Corp.*,
    61 F. Supp. 3d 78 (D.D.C. 2014)...............................................................................2

*Cicippio v. Islamic Republic of Iran*,
    30 F.3d 164 (D.C. Cir. 1994).....................................................................................3

*Heroth v. Kingdom of Saudi Arabia*,
    331 F. App'x 1 (D.C. Cir. 2009)................................................................................6

*Ivanenko v. Yanukovich*,
    995 F.3d 232 (D.C. Cir. 2021)...................................................................................4

*Kurd v. Republic of Turkey*,
    438 F. Supp. 3d 69 (D.D.C. 2020).............................................................................9

*Mwani v. bin Laden*,
    417 F.3d 1 (D.C. Cir. 2005)...............................................................................3, 4, 6

*Naoko Ohno v. Yuko Yasuma*,
    723 F.3d 984 (9th Cir. 2013) .....................................................................................4

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015).....................................................................................................5

*Pablo Star Ltd. v. Welsh Gov't*,
    961 F.3d 555 (2d Cir. 2020)...................................................................................5, 7

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)...................................................................................................8

*Potter v. Toei Animation Inc.*,
    839 F. Supp. 2d 49 (D.D.C. 2012).............................................................................2

\* *Republic of Argentina v. Weltover, Inc.*,
 504 U.S. 607 (1992)......................................................................................................5

\* *Rosenkrantz v. Inter-American Dev. Bank*,
 35 F.4th 854 (D.C. Cir. 2022).......................................................................................6

*Ryzhov v. Russian Federation*,
 No. 23-cv-2794, 2024 WL 81281 (D.D.C. Jan. 8, 2024)..............................................4

\* *Saudi Arabia v. Nelson*,
 507 U.S. 349 (1993)......................................................................................................3

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
 549 U.S. 422 (2007)......................................................................................................7

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
 30 F.3d 148 (D.C. Cir. 1994)........................................................................................5

**CONSTITUTIONAL PROVISIONS AND STATUTES**

U.S. Const. amend. I ............................................................................................................4

28 U.S.C. § 1603(d)..............................................................................................................7

Japan Const. art. 9 (Nov. 3, 1946) ........................................................................................5

Online Safety Act 2023, c. 50 (U.K.) ................................................................................8, 9

**INTRODUCTION**

Plaintiffs fail to overcome the obvious sovereign immunity obstacles to this lawsuit. Plaintiffs offer no response at all to Ofcom's showing that it is a foreign state entity, and their arguments under the commercial activity exception fall flat. Plaintiffs' assertion that Ofcom's actions transgress the First Amendment is irrelevant: The commercial activity exception turns on the sovereign or commercial nature of the defendant's activities that give rise to the plaintiff's claims, not on whether the U.S. government could carry out the same activities consistent with constitutional constraints. Meanwhile, plaintiffs' efforts to analogize Ofcom to private industry groups like the Global Alliance for Responsible Media ignore the basic nature of Ofcom's functions: Ofcom does not merely *advocate* for online safety. It *regulates* online safety by investigating and sanctioning violations.

Plaintiffs' responses on forum non conveniens and comity are weaker still. Plaintiffs barely mention the governing legal standards. Instead, they argue the merits of their service of process claim. Those arguments are irrelevant to the threshold question of *where* the claim should be adjudicated. The Online Safety Act's judicial review procedures provide a more than adequate forum, and the United Kingdom has a particularly strong interest in addressing whether the Online Safety Act's express provision for email service conflicts with any United Kingdom treaty obligations. For that reason too, the Court should dismiss.

**ARGUMENT**

**I.   OFCOM HAS SOVEREIGN IMMUNITY FROM THIS SUIT**

The Court lacks subject matter jurisdiction because Ofcom is a foreign state entity under the Foreign Sovereign Immunities Act and the commercial activity exception does not apply. Plaintiffs offer no response on the first issue, and their response on the second fails.

### A.     Plaintiffs Forfeited Any Argument that Ofcom Is Not a Foreign State Entity

Plaintiffs forfeited any challenge to Ofcom's sovereign status by offering no meaningful response on this topic. Ofcom spent eight pages explaining why it is a foreign state entity under either the "core functions" test or the five-factor "organ" test and submitted a detailed declaration substantiating its position. Ofcom Mem. 11-19 & Ballantyne Decl. ¶¶3-37. Plaintiffs offer no evidence in response and instead simply assert that "Plaintiff disagrees with this premise, for the reasons given in the Complaint," and that "[n]othing in this Opposition should be read as a concession that Ofcom is a 'foreign state' under the FSIA or that its functions are exclusively sovereign." Opp. 20. Those empty placeholders are insufficient to preserve the argument.

It is well established that "failure to respond to a legal argument made in a defendant's motion to dismiss can be treated as a concession of that argument and, thus, result in dismissal of the cause of action." *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 83 n.2 (D.D.C. 2014) (Contreras, J.); *see also Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded."), *aff'd*, No. 12-5084 (D.C. Cir. July 18, 2012). The same principle applies where a plaintiff makes only passing reference to an argument. "Mentioning an argument 'in the most skeletal way, leaving the court to do counsel's work, . . .' is tantamount to failing to raise it." *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019). Plaintiffs' fleeting allusion to this issue is insufficient under those principles.

Plaintiffs cannot avoid that forfeiture merely by referencing unspecified arguments in their Complaint. Courts "reject a party's attempt to evade [the forfeiture] rule by incorporating by reference an argument made at an earlier stage of the litigation." *Al-Tamimi*, 916 F.3d at 6 (collecting cases). It is wholly unclear what "reasons given in the Complaint" plaintiffs are even referring to, given that the Complaint mentions neither the core functions test nor the five-factor

2

organ test that Ofcom invokes.  Dkt. 1.  Regardless, it is not this Court's job to hunt through prior pleadings for allegations that might support an argument.  Plaintiffs forfeited this issue.

### B. Plaintiffs' Commercial Activity Arguments Are Meritless

Plaintiffs argue that Ofcom's activities are commercial rather than sovereign for two reasons: because the First Amendment allegedly prohibits sovereigns from engaging in the activities in the United States; and because the activities supposedly resemble conduct by private industry groups.  Opp. 21-28.  Neither argument stands up to scrutiny.

#### 1. Ofcom's Online Safety Regulation Is a Sovereign Activity Regardless of the Scope of Any U.S. Constitutional Provisions

Whether a foreign state entity's activities are sovereign or commercial depends on the nature of the activities, not on whether the U.S. Constitution would permit the U.S. government to engage in them.  Courts have regularly deemed activities to be sovereign in nature even when they involved egregious and brazen illegal conduct.  *A fortiori*, Ofcom's online safety regulation to protect UK internet users qualifies as sovereign activity here.

In *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993), for example, the Supreme Court held that the Saudi government engaged in sovereign rather than commercial activity when it wrongfully arrested, imprisoned, and tortured an employee.  It explained:  "The conduct boils down to abuse of the power of its police by the Saudi Government, and however monstrous such abuse undoubtedly may be, a foreign state's exercise of the power of its police has long been understood for purposes of the restrictive theory as peculiarly sovereign in nature." *Id.* at 361.

In *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164 (D.C. Cir. 1994), the D.C. Circuit held that Iran engaged in sovereign activity when it abducted and tortured two foreign workers, explaining that the commercial activity exception does not cover "nefarious acts that are grist for John Le Carre novels." *Id.* at 168.  And in *Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005), the

3

court held that Afghanistan's operation of terrorist training camps was sovereign activity because "[g]ranting refuge to terrorist training camps is a uniquely sovereign act." *Id.* at 17; *see also Ivanenko v. Yanukovich*, 995 F.3d 232, 238-39 (D.C. Cir. 2021) (expropriation).

In *Ryzhov v. Russian Federation*, No. 23-cv-2794, 2024 WL 81281 (D.D.C. Jan. 8, 2024) (Contreras, J.), this Court applied those principles to a case where Russian prosecutors allegedly "committed criminal acts by, for example, attempting to extort money from [the plaintiff], threatening criminal prosecution, attempting to coerce him into divesting himself and his clients of real property and income derived therefrom, and seizing property by eminent domain." *Id.* at *4 (citations omitted). The Court held that "[t]hese do not appear to be acts of a business entity in the private sector, and most, arguably, are the acts of a sovereign, even if the alleged acts amount to abuses of authority." *Id.* (citing *Nelson* and *Mwani*).

Those cases foreclose plaintiffs' argument. Torture, abduction, and the operation of terrorist training camps are all blatantly illegal conduct that any civilized nation would condemn. The U.S. Constitution no doubt prohibits the U.S. government from engaging in such conduct. If courts deem even that flagrantly illegal conduct to be sovereign under the commercial activity exception, surely Ofcom's far more innocuous conduct – online safety regulation that allegedly exceeds the bounds of the First Amendment – cannot be excluded on that basis.

The First Amendment is a particularly poor yardstick for sovereign conduct because countries take many different approaches to the freedom of speech. The First Amendment by its terms does not apply to foreign state entities like the UK Parliament or Ofcom. *See* U.S. Const. amend. I ("***Congress*** shall make no law . . . ." (emphasis added)); *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013) ("Foreign governments . . . are not bound by the U.S. or [State] Constitutions." (collecting authorities)). Still less does the First Amendment apply when Ofcom invokes its ***UK statutory authority*** to protect ***UK users*** from illegal content. It makes no

4

sense for sovereign immunity to turn on whether a foreign state exercises its *foreign* authority in a manner consistent with how the U.S. government may exercise its *own* authority.[1]

Ofcom's activities are sovereign rather than commercial in nature because they involve paradigmatic regulatory activities such as investigating, enforcing, and sanctioning violations of a foreign statutory regime. Plaintiffs' complaints about how Ofcom has exercised its authority do not make Ofcom's activities any less sovereign in nature.

### 2. *Ofcom's Online Safety Regulation Is Not Comparable to Activities of Private Industry Groups*

Plaintiffs also try to classify Ofcom's activities as commercial rather than sovereign by comparing Ofcom to private industry organizations like the Global Alliance for Responsible Media. Opp. 23-28. Those strained analogies likewise fail.

Under *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992), whether a foreign state entity's actions are sovereign or commercial turns on "whether the *particular actions* that the foreign state performs . . . are the type of actions by which a private party engages in 'trade and traffic or commerce.'" *Id.* at 614 (emphasis altered). The focus is on "the '*particular conduct*' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015) (emphasis added). As the Second Circuit observed in *Pablo Star Ltd. v. Welsh Government*, 961 F.3d 555 (2d Cir. 2020), that standard "may sometimes depend on the level of generality at which the conduct is viewed," and a court should undertake "a nuanced examination of the context of the acts involved." *Id.* at 561.

---

[1] To take another example, Japan has formally renounced the use of military force. *See* Japan Const. art. 9 (Nov. 3, 1946) ("[T]he Japanese people forever renounce war as a sovereign right of the nation and the threat or use of force as means of settling international disputes."). Yet no one doubts that military activity constitutes a core sovereign function, in *any* country. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994) ("The 'powers to declare and wage war' are among the 'necessary concomitants' of sovereignty.").

Consistent with that guidance, courts reject attempts to classify sovereign activity as commercial by drawing strained analogies to private conduct. In *Rosenkrantz v. Inter-American Development Bank*, 35 F.4th 854 (D.C. Cir. 2022), for example, the D.C. Circuit held that the Inter-American Development Bank ("IDB") engaged in sovereign activity when it investigated wrongdoing in a project it financed. The court acknowledged that "private market actors use similar investigatory and disciplinary tools to root out internal fraud." *Id.* at 864. But the court deemed the analogy to corporate internal investigations inapt because the IDB's authority derived from its charter, the IDB could take disciplinary action against any party involved in the project, and its sanctions could have effects far beyond the project at issue. *Id.* at 864-65.

In *Mwani*, the D.C. Circuit rejected the argument that Afghanistan's harboring of terrorist camps was commercial activity because it was analogous to a land lease. 417 F.3d at 17. In *Heroth v. Kingdom of Saudi Arabia*, 331 F. App'x 1 (D.C. Cir. 2009), the court rejected the argument that Saudi Arabia's use of its national guard to protect a residential compound was a commercial activity because it was analogous to the use of private security guards. *Id.* at 3. And in *Anglo-Iberia Underwriting Management v. P.T. Jamsostek*, 600 F.3d 171 (2d Cir. 2010), the court rejected the argument that Indonesia's social security health insurer engaged in commercial activity because it provided services similar to a private insurer. *Id.* at 177-78.

This Court should likewise reject plaintiffs' loose analogies. Plaintiffs principally compare Ofcom to the Global Alliance for Responsible Media ("GARM"), a private industry group that "worked with global regulators to pressure companies like Twitter . . . to coercively influence Twitter's moderation decisions" and "procure[d] boycotts of the platform if the platform refused to obey." Opp. 24. That analogy is inapt. Ofcom does not merely "work[ ] with global regulators" – it *is* a regulator. And Ofcom does not pursue its objectives by encouraging voluntary boycotts – it **investigates and sanctions** statutory violations.

6

Plaintiffs urge that Ofcom and GARM pursue similar objectives. Opp. 24-25. Ofcom disputes that premise, but even if it were true, Ofcom and GARM pursue their objectives by very different means. Ofcom *regulates* online safety by investigating and imposing sanctions for noncompliance. GARM engaged in private advocacy, lobbying, engagement, and boycotting. Under the FSIA, "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). Plaintiffs' efforts to compare Ofcom to GARM improperly focus on alleged similarities in purpose rather than the nature of the activities. The FSIA prohibits that approach. See *Pablo Star*, 961 F.3d at 562 (rejecting argument based on "the purposes or *reasons* for the Welsh Government's actions, and not what it did to accomplish its goals").

## II.  PLAINTIFFS DO NOT MEANINGFULLY ENGAGE WITH THE FORUM NON CONVENIENS AND COMITY STANDARDS

Ofcom explained why both forum non conveniens and international comity favor resolving this dispute in the United Kingdom, not the United States. Ofcom Mem. 23-26. On each issue, Ofcom set out the relevant standards, including the private and public interest factors that govern forum non conveniens determinations. *Id.* Plaintiffs respond by ignoring those standards altogether and asserting that "this case is not about comity or forum non conveniens at all." Opp. 28. Instead, they devote this entire section of their brief to arguing the *merits* of their claims, particularly on service of process. *Id.* at 28-33. That is not a valid response.

Forum non conveniens and international comity are threshold arguments about *where* claims should be adjudicated. See *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A *forum non conveniens* dismissal 'den[ies] audience to a case on the merits'; it is a determination that the merits should be adjudicated elsewhere." (citation omitted)). A plaintiff cannot bypass those threshold objections simply by arguing the merits of its claims. The

7

ultimate relief plaintiffs seek in this case includes a declaratory judgment that Ofcom did not properly serve its information notices on them. Dkt. 1 ¶¶117-131. Ofcom's forum non conveniens and international comity arguments are reasons why that issue should be resolved in the United Kingdom. Plaintiffs cannot bypass those threshold objections simply by arguing about whether Ofcom properly served them.

As Ofcom explained, a court may dismiss a suit for forum non conveniens where "an adequate alternative forum is available to hear the dispute" and "the balance of certain public and private interest factors strongly counsels in favor of trying the dispute in the alternative forum." *In re Air Crash over S. Indian Ocean on Mar. 8, 2014*, 946 F.3d 607, 612 (D.C. Cir. 2020). Plaintiffs do not dispute that the United Kingdom would provide an adequate forum for their claims. The Online Safety Act expressly provides for judicial review in the UK courts. Ballantyne Decl. ¶37 (citing Ex. 8 §168). Plaintiffs do not deny that they could raise their service of process and other challenges in those UK proceedings. Plaintiffs' belief that this Court might apply more favorable legal standards does not make the UK forum inadequate. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981) ("[A] change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry."); *In re Air Crash*, 946 F.3d at 613 ("[A] foreign forum is not inadequate merely because it has less favorable substantive law.").

Nor do plaintiffs address the private and public interest factors. Plaintiffs' service of process arguments only underscore why the United Kingdom has an overwhelming public interest in resolving this dispute. The Online Safety Act expressly authorizes Ofcom to serve information notices by email. Ballantyne Decl. ¶30 (citing Ex. 8 §208(2)). Plaintiffs are thus effectively arguing that the Online Safety Act violates the United Kingdom's treaty obligations as applied to United States respondents under the US-UK Mutual Legal Assistance Treaty, the

8

Hague Service Convention, or some other instrument. The UK courts have a paramount public interest in resolving that alleged conflict between UK legislation and UK treaty obligations.

Plaintiffs likewise ignore the standards for international comity. Courts may dismiss a suit based on adjudicative comity "where there is . . . a pending proceeding which could provide an alternative remedy." *Kurd v. Republic of Turkey*, 438 F. Supp. 3d 69, 92 (D.D.C. 2020), *aff'd*, 6 F.4th 31 (D.C. Cir. 2021). Ofcom's enforcement proceedings against 4chan remain ongoing, and those proceedings plus the sufficiency of judicial review provide a more than adequate opportunity to resolve these matters. For that reason too, the Court should dismiss.

### III.  KIWI FARMS HAS NOT ESTABLISHED RIPENESS OR STANDING

Seeking to manufacture a live dispute with Kiwi Farms, plaintiffs strain to cast Ofcom's July 25, 2025, informal email inquiry as a Section 100 information notice. Opp. 33-35. But informal email correspondence is not equivalent to a formal order imposing legal obligations. *See AT&T Co. v. EEOC*, 270 F.3d 973, 975-76 (D.C. Cir. 2001) (agency letter was not formal agency action and inflicted no injury). Plaintiffs assert that the Online Safety Act imposes no particular format requirements. Opp. 33. In fact, the Act imposes detailed requirements for the contents of information notices. Ballantyne Decl. Ex. 8 § 102(3). Plaintiffs make no effort to show that Ofcom's informal email inquiry bore any resemblance to those detailed requirements, and they cite no case from the United Kingdom or the United States where an informal email inquiry was held to be a compulsory order even though the ***agency itself*** disavowed that status. Kiwi Farms thus cannot establish standing or ripeness.

## **CONCLUSION**

Plaintiffs' claims against Ofcom should be dismissed with prejudice.

Dated:  January 16, 2026                                       Respectfully submitted,
        Washington, D.C.

          /s/ Robert K. Kry
Robert K. Kry
D.C. Bar # 490545
Christian I. Bale
D.C. Bar # 90020099
MOLO LAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2011
rkry@mololamken.com

*Attorneys for the UK Office of Communications, a/k/a Ofcom*